UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
ROBERT SOLOMON, JANE SOLOMON, and
FIRST KEYSTONE CONSULTANTS, INC.,

                           Plaintiffs,

            -against-                         **MEMORANDUM
                                                 AND ORDER**
SIEMENS INDUSTRY, INC., et al.,               11-CV-1321 (DLI-SMG)

                         Defendants.
-------------------------------------------------------------X
*Gold, Steven M., United States Magistrate Judge:*

## INTRODUCTION

      This litigation is one of several arising from the failure of the business relationship between plaintiffs and non-party Schlesinger Electrical Contractors, Inc. ("Schlesinger"). In this action, plaintiffs assert several claims against defendant Siemens Industry, Inc. ("Siemens") arising out of Siemens' dealings with Schlesinger, and in particular the operation of Schlesinger-Siemens Electrical, LLC ("SSE"), of which Siemens and Schlesinger were the members. Plaintiffs also assert claims in this action against Manatt, Phelps & Phillips, LLP ("Manatt"), a law firm that advised Siemens in connection with its dealings with Schlesinger and plaintiffs.

      On June 21, 2013, I issued a Report recommending that summary judgment be awarded in favor of defendants on all of plaintiffs' claims and that this action be dismissed. Docket Entry 193. As of that date, plaintiffs Robert and Jane Solomon were proceeding *pro se* and plaintiff First Keystone Consultants, Inc. ("FKC") was represented by attorney Richard H. Agins of the firm Sigman & Zimolong, LLC. Docket Entry 38. On July 22, 2013, however, Neil Solomon moved for leave to appear pro hac vice as counsel on behalf of all three plaintiffs. Docket Entry 195. At the same time, Neil Solomon filed objections on behalf of plaintiffs to the Report I had

issued on June 21, 2013.

Defendants Siemens and Manatt oppose Neil Solomon's motion for pro hac vice admission based upon his prior legal representation of SSE. Defendants contend that there is a substantial relationship between the matters handled by Neil Solomon when he represented SSE and those at issue in this lawsuit. Plaintiffs argue that there is no meaningful relationship between the matters Neil Solomon handled as counsel for SSE and the issues raised in the current lawsuit, and that defendants' opposition to the pending pro hac vice application therefore lacks merit.

For the reasons stated below, the motion to appear pro hac vice is granted for the limited purpose of allowing Neil Solomon to file objections to the pending Report and participate in any oral argument held with respect to those objections, but without prejudice to defendants' right to renew their opposition to his appearance in the event the recommendations made in my Report are not adopted and the case survives defendants' summary judgment motion.

**FACTUAL BACKGROUND**

The facts relevant to the underlying litigation are set out in detail in the Report and are not repeated here. For purposes of the instant motion, it is sufficient to note that SSE was an LLC formed in 2004 by defendant Siemens and Schlesinger, a non-party, for the purpose of bidding on and performing electrical work for the New York City Department of Environmental Protection. Schlesinger and FKC, meanwhile, formed SFD Associates as a joint venture, and their joint venture agreement provided for equal sharing of profits generated by SSE. Once the joint venture was formed, Schlesinger appointed plaintiff Robert Solomon to the Board of SSE. In 2007, however, the relationship between Schlesinger and Robert Solomon began to break down, with the result that Robert Solomon was removed from the SSE Board in December of

that year.

Plaintiffs assert various causes of action in their complaint arising out of the 2007 decision by the SSE Board to oust plaintiff Robert Solomon from his position as a Board member, including claims for defamation, tortious interference with contract, and aiding and abetting a breach of fiduciary duty. I concluded in my Report, and plaintiffs have acknowledged, that these claims are time-barred. Report at 13. Indeed, in the memorandum they submitted in connection with the pending motion, plaintiffs explicitly state, "Simply put the only claims that remain in this case are the Tax Loss claims." Pl. Mem. at 3, Docket Entry 205.

These tax loss claims, the only claims asserted by plaintiffs that are not time-barred, primarily concern an agreement entered into by Siemens and Schlesinger on September 21, 2010. The agreement, referred to by the parties as a restructuring agreement, provides for certain tax losses incurred by SSE, an LLC, to be allocated in their entirety to Siemens, a member of the LLC. *Id.* at 11. Plaintiffs assert that the tax losses properly belonged at least in part to Schlesinger, and therefore indirectly belonged to FKC as well because Schlesinger and FKC were at the relevant time participating in a joint venture known as SFD Associates. Plaintiffs go on to argue that it was improper for Siemens to reallocate these tax losses to itself. Based on this allegedly wrongful conduct, plaintiffs assert claims against Siemens for tortious interference with a contract between Schlesinger and FKC, aiding and abetting Schlesinger's breach of fiduciary duty to plaintiffs, conversion and unjust enrichment. *Id.* at 15. I concluded in my Report that defendants' motion for summary judgment on each of these claims should be granted, that all claims against the defendants should be dismissed, and that plaintiffs' cross-motion for summary judgment should be denied. Report at 36.

Between 2006 and 2008, Neil Solomon served as legal counsel for SSE. Def. Mem. at 1,

3

Docket Entry 202. Neil Solomon was hired by plaintiff Robert Solomon, his father, during the early stages of SSE's operation and was responsible for reviewing all legal documents related to the general management of the company. *Id.* Defendants contend that, during the twenty months he was employed by SSE, Neil Solomon "worked as part of SSE's strategic contract and legal team, logging literally thousands of hours accessing confidential data, conferring with Siemens personnel and gathering privileged insights on many of the issues that underlie this litigation." *Id.*

## DISCUSSION

Disqualification of an attorney is "a serious sanction that ought not be imposed lightly," and courts in the Second Circuit therefore review motions for disqualification with "fairly strict scrutiny." *Shabbir v. Pakistan Int'l Airlines*, 443 F. Supp. 2d 299, 304-05 (E.D.N.Y. 2005) (citing *Lamborn v. Dittmer*, 873 F.2d 522, 531 (2d Cir.1989)). In general, disqualification is disfavored because it has the "serious and immediate adverse effect" of "denying the client his choice of counsel." *Soc'y for Good Will to Retarded Children, Inc. v. Carey*, 466 F. Supp. 722, 724 (E.D.N.Y. 1979). Moreover, motions to disqualify are often made for tactical reasons and, even when made with the best intentions, typically cause delay. *See Evans v. Artek Sys. Corp.*, 715 F.2d 788, 792 (2d Cir. 1983) (citing *Bd. of Educ. of the City of New York v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979)). For these reasons, unless the challenged representation "tends to taint the underlying trial . . . courts should be quite hesitant to disqualify an attorney." *Nyquist*, 590 F.2d 1241, 1246 (citing *W. T. Grant Co. v. Haines*, 531 F.2d 671, 677 (2d Cir. 1976)) (internal quotation marks omitted). Accordingly, a motion for disqualification will generally be granted only "where necessary to preserve the integrity of the adversary process."

4

*Id.*  Otherwise, most ethical violations may be dealt with by the "comprehensive independent disciplinary machinery." *Soc'y for Good Will*, 466 F. Supp. at 724.

Nonetheless, the "right freely to choose [one's] counsel . . . must be balanced against the need to maintain the highest standards of the profession." *Gov't of India v. Cook Indus., Inc.*, 569 F.2d 737, 739 (2d Cir. 1978).  Thus, when a "clear violation" of the Rules of Professional Conduct threatens the integrity of the court proceedings, disqualification may be appropriate. *Shabbir*, 443 F. Supp. 2d at 305 (citing *U.S. Football League v. Nat'l Football League*, 605 F. Supp. 1448, 1452 (S.D.N.Y.1985)).  Furthermore, "any doubt should be resolved in favor of disqualification." *Revise Clothing, Inc. v. Joe's Jeans Subsidiary, Inc.*, 687 F. Supp. 2d 381, 387 (S.D.N.Y.2010) (citing *Hull v. Celanese Corp.,* 513 F.3d 568, 571 (2d Cir.1975)).

Where, as here, a former client challenges former counsel's attempt to represent an adversary, the attorney

> *may* be disqualified . . . if:
>
> (1) the moving party is a former client of the adverse party's counsel;
>
> (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and
>
> (3) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client.

*Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791 (2d Cir. 1983) (emphasis added).  Disqualification is permitted, but not mandated, when all three of the above *Evans* prongs are met.  If the former client is able to establish a substantial relationship between the prior representation and the current lawsuit, a rebuttable presumption of access to privileged information arises.  *Cablevision Lightpath, Inc. v. Verizon New York Inc.*, 2011 WL 3845504, at *2 (E.D.N.Y. Aug. 30, 2011).

It is undisputed that Neil Solomon worked as an attorney for SSE from 2006 through 2008, and that Siemens was a member of SSE at that time. Defendants have thus satisfied the first prong of the *Evans* test. The more difficult question is whether defendants have established the second element of the *Evans* test; that is, whether the matters handled by Neil Solomon when representing SSE are substantially related to those at issue here.

Defendants argue that there is a substantial relationship between the subject matter of Neil Solomon's prior representation and the issues raised by the present lawsuit, that Neil Solomon had access to relevant privileged information in the course of that prior representation, and that Neil Solomon should therefore be disqualified from representing plaintiffs in the present litigation. *See* Def. Mem. at 1; Def. Reply Mem. at 1, Docket Entry 207. More specifically, defendants allege that plaintiffs' tax loss claims are based upon contractual obligations undertaken as early as 2005 and involve Robert Solomon's general management of SSE during the time period of 2006 to 2008 as well as his ouster from the SSE Board in December of 2007. Def. Mem. at 3, 11, 19. Thus, according to defendants, there is a close relationship between the facts at issue in this case and those involved in Neil Solomon's prior representation of SSE.

Plaintiffs, in contrast, emphasize the importance of a party's right to select counsel of his choice and argue that a substantial relationship may be established only if the issues involved in the current and prior representation are identical or essentially the same. *See* Pl. Mem. at 1. Plaintiffs further argue that any facts Neil Solomon might present or rely upon if the case proceeds to trial would be learned by any attorney through discovery, publicly-available information, and discussions with plaintiffs. *Id.* at 2. Plaintiffs also emphasize that Neil Solomon was not involved in any way with the 2010 restructuring agreement which reallocated the tax losses at issue to Siemens. *Id.*

In considering these arguments, I take into account the procedural posture of this case at the time Neil Solomon filed his motion for pro hac vice admission. Significantly, discovery had by then been completed, cross-motions for summary judgment had been fully briefed, and a Report had been issued recommending dismissal of all of plaintiffs' claims. If that Report is adopted, this case will come to a close.

Moreover, at or about the same time he moved for admission pro hac vice, Neil Solomon filed objections to the Report on plaintiffs' behalf. Pl. Obj., Docket Entry 197. The objections do not appear to rely to any significant extent on facts that arose between 2006 and 2008, when Neil Solomon was serving as counsel to SSE, much less on any privileged attorney-client communications from that time. To the contrary, the objections filed by Neil Solomon focus on the restructuring agreement entered into in 2010 (Pl. Obj. at 3-5), the tax returns filed by SSE in 2009 and thereafter (Pl. Obj. at 8), a letter written by Siemens dated August 4, 2009 concerning certain labor costs (Pl. Obj. 197 at 6-7), and a draft agreement, never consummated, from July 2009, pursuant to which Siemens would purchase FKC's ownership in SFD (Pl. Obj. at 16 *et seq.*). Indeed, although defendants have presumably reviewed the submission filed on plaintiffs' behalf by Neil Solomon, they identify nothing in it that reflects access to privileged communications or is otherwise improper. Rather, defendants' opposition to Neil Solomon's appearance focuses on "the story that both sides will tell *at trial*." Def. Mem. at 1 (emphasis added)*; see also* Def. Mem. at 3 ("If there is ever a trial on the issue of Plaintiff's ownership interest in SSE (part of their Tax Claims), then Plaintiffs' past conduct as regards SSE will certainly be relevant") and at 21 ("If the case proceeds to trial . . . Siemens will demonstrate that Robert Solomon grossly mismanaged SSE's business, helped underbid on projects, gave out sweetheart deals to his friends and family members (Neil Solomon included), allowed the

7

projects to fall behind schedule, and in the words of Schlesinger's principal, used SSE like his 'personal candy store'").

In light of these circumstances, I conclude that it is not necessary at this juncture to determine whether Neil Solomon should be disqualified from representing plaintiffs if this case proceeds to trial. Allowing Neil Solomon to present and argue plaintiffs' objections to the Report will avoid the "serious and immediate adverse effect" of "denying [plaintiffs their] choice of counsel," *Soc'y for Good Will to Retarded Children, Inc.*, 466 F. Supp. at 724, while still, at least for the time being, "preserv[ing] the integrity of the adversary process," *Nyquist*, 590 F.2d at 1246. Although motions to disqualify are typically granted or denied in their entirety, there is precedent for allowing representation only for a limited purpose, largely in the context of motions to disqualify lawyers who may be both a witness and an advocate. In one such example, a court held that "no disqualification should occur until it is apparent the attorney's testimony is itself admissible and necessary. If disqualification is still required, *it should be narrowly tailored to allow counsel to participate in all aspects of the case that would not involve counsel's testimony . . . .*" *Fenn & Fenn, Inc. v. MacQueen*, 1989 WL 58041, at *8 (S.D.N.Y. May 19, 1989) (emphasis added). Similarly, in a case where defendants argued that plaintiffs' attorney should be disqualified from any role in the case because of an advocate-witness problem, a court denied defendants' motion to disqualify but stressed that the law firm in question "will be bound by its prior representations that it will not serve as trial counsel in this case and that it will not question any witnesses at depositions." *Amusement Indus., Inc. v. Stern*, 657 F. Supp. 2d 458, 463 (S.D.N.Y. 2009).

## CONCLUSION

For the reasons stated above, Neil Solomon's motion for pro hac vice admission is granted for the limited purpose of presenting and, if oral argument is held, arguing plaintiffs' objections to the Report. If the Report is not adopted in its entirety and the case is not dismissed, defendants will be permitted to renew their opposition to Neil Solomon's appearance by filing a motion to disqualify that is focused on the claims that survive and will be proceeding to trial.

SO ORDERED.

/s/
**STEVEN M. GOLD**
**United States Magistrate Judge**

**Brooklyn, New York**
**October 21, 2013**

*U:\CG 2013-2014\Solomon 11-CV-1321\Solomon Pro Hac Vice M&O final.docx*